```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  10/9/2020
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
      :
SCHEPIS, INC. et al.,      :
      :
                Plaintiffs,      :
      :    20-cv-2647 (LJL)
         -v-      :
      :    OPINION & ORDER
CANELAS, et al.,      :
      :
                Defendants.      :
      :
-------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Defendants Peter S. Cane and Canelaw LLP ("Defendants")[1] move, pursuant to Fed. R. Civ. P. 12(c), for judgment on the pleadings as to all claims in Plaintiffs' complaint; for an order authorizing interpleader pursuant to 28 U.S.C. §§ 1335 and 2361; and for Rule 11 sanctions against Plaintiffs Anthony Schepis, Frank Canelas, Jr., and Pursuit Opportunity Fund, I, L.P. ("Plaintiffs"). Intervenor Defendants Claridge Associates, LLC, Jamiscott, LLC, Leslie Schneider, and Lillian Schneider move to dismiss Defendants' motion for interpleader. Dkt. No. 57.

BACKGROUND

    A. <u>The Connecticut Actions</u>

The instant dispute arises out of two lawsuits pending in Connecticut Superior Court against Plaintiffs Anthony Schepis ("Schepis") and Frank Canelas, Jr. ("Canelas"), as well as various investment partnerships and corporations that they allegedly own and operate as a

---

[1] The complaint originally named JPMorgan Chase Bank, N.A., as a defendant. It was dismissed by stipulation of dismissal on August 7, 2020. Dkt No. 43.

unitary hedge fund, the Pursuit Hedge Fund Group ("Pursuit"): *Alpha Beta Capital Partners, L.P. v. Pursuit Investment Management, LLC*, No. X08-FST-CV15-5014970-S (Conn. Super. Ct.) ("*Alpha Beta* Action") and *Claridge Associates, LLC et al. v. Pursuit Partners, LLC et al.*, No. FST-CV-15-6026069-S (Conn. Super. Ct.) ("*Claridge Associates* Action") (together, "Connecticut State Actions").  The investment partnerships and corporations that are part of the Pursuit complex include the plaintiff here Pursuit Opportunity Fund I, L.P. ("POF").  They also include Pursuit Capital Management Fund I, LP ("PCM"), the investment advisor to both POF and PCM, Pursuit Investment Management, LLC ("PIM"), Pursuit Partners, LLC, and offshore affiliates Pursuit Capital Master (Cayman) Ltd., and Pursuit Opportunity Fund I Master, Ltd.  *See Alpha Beta Capital Partners, L.P. v. Pursuit Inv. Mgmt., LLC*, 219 A.3d 801, 807 (Conn. App. Ct. 2019), *cert. denied*, 221 A.3d 446 (Conn. 2020), and *cert. denied*, 221 A.3d 446 (Conn. 2020).

The Connecticut Actions were brought by Alpha Beta Capital Partners, L.P. ("Alpha Beta Capital"), investors in POF and PCM who alleged that Schepis, Canelas, and various Pursuit entities violated the terms of a confidential settlement agreement (the "CSA") resolving a New York state action and parallel arbitration in which the investors had alleged the investment partnerships were mismanaged.  *Id*. at 809-812.  As partial consideration for releasing the defendants, Pursuit confirmed the investor's interest in a litigation ("UBS Action") brought against UBS AG and Moody's Corporation arising out of Pursuit's investment in collateralized debt obligations sold by UBS AG on which Pursuit had experienced losses.  *Id*. at 808-10.  The UBS Action ended in a $36 million settlement ("UBS Settlement") and the *Alpha Beta* Action plaintiffs alleged that the *Alpha Beta* defendants—including Plaintiffs herein—violated the CSA

2

by failing to pay them their proportionate and agreed upon share of the $36 million settlement. *Id.* at 812.

On September 11, 2015, after settlement of the UBS Action, the plaintiff in the *Alpha Beta* Action filed an application for a prejudgment remedy under Connecticut law and a proposed summons and complaint alleging that Schepis, Canelas, POF, PIM, and PCM had breached the CSA by failing to turn over their proportionate share of the proceeds from the UBS Settlement. *Id.* On June 16, 2016, after an eight-day hearing, the trial court granted plaintiff's application and the *Alpha Beta* Action plaintiff obtained security for the full amount of the prejudgment remedy of $5,421,582. *Id.* at 813.

In satisfaction of the prejudgment remedy, the defendants in the *Alpha Beta* Action, including Plaintiffs herein, had voluntarily deposited $5,421,582 into an account entitled "Peter S. Cane Attorney Trust Account," Account Number xxxx-xxxx-xxxx-8990 ("Cane Trust Account"), which was maintained by Plaintiff's attorneys in the *Alpha Beta* Action—Defendants herein. Compl. ¶ 12. The $5,421,582 held in the Cane Trust Account included $962,562 deposited by Schepis and Canelas ("Schepis and Canelas Funds") and $549,891 owned by POF ("POF Funds"). These are the funds at issue in the instant case.

On October 14, 2016, the court entered judgment partially in favor of the plaintiff in the amount of $5,422,540 against PCM, PIM, POF and Canelas and Schepis. *Alpha Beta Capital Partners*, 219 A.3d at 813-14. The *Alpha Beta* Action defendants appealed, and on October 8, 2019, the Connecticut appellate court issued its decision in *Alpha Beta Cap. Partners, L.P. v. Pursuit Inv. Mgmt., LLC*, 219 A.3d 801 (Conn. App. Ct. 2019). The court affirmed the judgment against PCM and PIM. However, it reversed the judgment against POF, holding that Alpha Beta Capital had redeemed its interest in POF and therefore POF could not remit the UBS Action

proceeds to—and therefore was not liable to—Alpha Beta Capital. *Id*. at 832. The Court also held that Schepis and Canelas were not individually liable for the nonpayment of the UBS litigation proceeds on a piercing the corporate veil or alter ego theory. *Id*. Cross-petitions for certiorari were denied by the Connecticut Supreme Court on January 2, 2020, and on or about January 23, 2020, all appellate stays restricting the funds ended. Compl. ¶ 17; Dkt. No. 59 ("Fiano Decl.") Ex. M.

      During the pendency of the *Alpha Beta* Action, a second set of plaintiffs ("the Schneider Group") (comprised of various persons including the Intervenor Defendants herein), commenced the *Claridge Associates* Action in Connecticut Superior Court. *See* Knag Decl. ¶¶ 2, 5. The Schneider Group is similarly situated to Alpha Beta Capital and it asserted similar claims to those asserted by the *Alpha Beta* Action plaintiffs but against only a partially overlapping group of defendants: Schepis, Canelas, PIM, Pursuit Partners, LLC, Pursuit Capital Master (Cayman) Ltd., and Pursuit Opportunity Fund I Master, Ltd. *Id*. ¶¶ 5-9. It did not name POF and PCM as defendants. On October 9, 2019, the day after the Connecticut appellate court decision affirming in part the judgment in favor of Alpha Beta Capital, the Schneider Group (plainly knowledgeable about the fact that the appellate stay and the restraint it imposed in that action might end or be modified) filed an application for a prejudgment remedy under Connecticut law seeking, among other things, to attach funds held in the Cane Trust Account. *Id*. ¶ 15. After further motions practice, *see* Knag Decl. ¶¶ 16-20, on January 3, 2020, the parties to the *Claridge Associates* Action entered into a Stipulation Regarding Temporary Restraining Order, Knag Decl. ¶ 21; Ex. 2 ("January 6, 2020 Stipulation"), and on January 6, 2020, the court entered an order approving the January 6, 2020 Stipulation. *Id*. ¶ 23; Ex. 3. The Stipulation recites that there is a stay in effect in relation to the *Alpha Beta* Action prohibiting the disbursement of $5,421,582 of

4

Attached Funds in the Case account "ending in 8890" (defined to be the "Attached Funds") (referencing the funds held in the Cane Trust Account) and that plaintiffs in the *Claridge Associates* action had filed an Application for Temporary Restraining Order seeking to restrain and prohibit the disbursement of the Attached Funds. *Id*. Ex. 2. It also refers to a Disclosure of Assets dated September 15, 2016, delineating the respective proportionate owners of the Attached Funds. *Id*. It then provides first that the hearing concerning the Application for a Temporary Restraining Order is withdrawn and second, as follows:

> The Defendants in this action shall not allow the transfer, voluntary encumbrance, withdrawal or disbursement of any portion of the Attached Funds delineated in the Disclosure of Assets and/or Marshal's Returns *as being owned by the individual Defendants Anthony Schepis and Frank Canelas (including but not limited to the $962,562 amount set out in the Disclosure of Assets)* until such time as the Court has held a hearing and ruling upon the [prejudgment remedy application].

*Id*. (emphasis added).

The Disclosure of Assets referenced in the stipulation reflects that the $5,421,582 is owned by the following defendants in the following amounts:

$2,627,601 – Pursuit Capital Management Fund I, L.P.

$1,281,528 – Pursuit Investment Management, LLC

$962,562 – Anthony Schepis and Frank Canelas, Jr.

$549,891 – Pursuit Opportunity Fund I, L.P.

Fiano Decl. Ex. A.

The total held by POF and Schepis and Canelas is $1,512,453.

B. This Action

This action was filed on March 30, 2020 by Schepis, Canelas and POF. That filing followed, by fifteen days, the commencement of a temporary suspension of the civil motion

5

calendar of the Connecticut Superior Court.  Dkt. No. 60 at 7 n.1.  That court was unavailable for the parties here.

The lawyers for Canelas, Schepis and Pursuit in the *Claridge Associates* Action are the defendants here, Peter S. Cane and CaneLaw LLP.  Then unable to go to the Connecticut court for that relief, Plaintiffs alleged that the $1,512,453 deposited in the Cane Trust Account which belong to the Plaintiffs was—as of January 23, 2020—no longer subject to any form of legal attachment, levy, garnishment, execution or judgment.  Compl. ¶ 18.  They also alleged that they have demanded return of the funds but that Defendants have refused to return the funds, on the basis that they are still restricted.  *Id*. ¶¶ 19-23.  On the strength of those allegations, Plaintiffs bring claims for conversion and statutory civil theft under Connecticut law.  As relief they seek compensatory damages, treble damages, and prejudgment interest at 10% per annum commencing on January 23, 2020 on the principal amount of $1,512,453.

On April 22, 2020, the plaintiffs in the *Claridge Associates* action (*i.e.,* Claridge Associates, LLC, Jamiscott LLC, Leslie Schneider, and Lillian Schneider) ("Intervenors") filed a motion to intervene.  Dkt. No. 9.  The Intervenors claimed to be the beneficiary of the temporary restraining order entered by the Connecticut Superior Court in the *Claridge Associates* Action. *Id.* ¶ 1.  Their answer and affirmative defenses in intervention assert that the TRO prohibits the distribution of the $962,562 held in the Chase IOLTA Account belonging to Schepis and Canelas.  *Id*. ¶¶ 13, 18.  At the initial pretrial conference, the Court granted the unopposed motion to intervene.

Subsequent events have resolved a portion of this case.  On May 5, 2020, the civil motion calendar of the Connecticut superior court was restored, following the suspension caused by the Covid-19 pandemic. The same day, Plaintiffs filed a motions in both the *Alpha Beta* Action and

6

the *Claridge Associates* Action for an order regarding release of the Plaintiff's funds held in the Cane Trust Account. The motion sought return of the $549,891 in the Cane Trust Account belonging to POF ("POF Funds") and that the the $962,562 belonging to Schepis and Canelas ("Schepis and Canelas Funds") be transferred from the Cane Trust Account to the appearing attorneys for Schepis and Canelis in the *Claridge Associates* Action.  Fiano Decl. Ex. J.

On June 8, 2020, the court in the *Claridge Associates* Aissued an order stating:

> The [*Claridge Associates* Action plaintiffs] make no claim to an additional $549,891, identified as owned by [POF], also being held in escrow.  To the extent that the [Plaintiffs herein] are seeking an order or clarification relating to the $549,891, said sum was never part of the stipulation or order of THIS court, limiting the ability of the escrow agent to transfer funds.  Nothing in any order of this court appears to have intended to limit or prevent the transfer of that money, to the extent that it remains held in escrow.

Fiano Decl. Ex. K.

On June 26, 2020, the court in the *Alpha Beta* Action issued an order with respect to the stay that had expired on January 23, 2020 in that matter:

> WHEREAS, on October 8, 2019, the Appellate Court issued a decision entitled *Alpha Beta Capital Partners, L.P. v. Pursuit Investment Management, LLC*, 193 Conn. App. 381 (2019).  In its decision, the Appellate Court partially reversed the trial court and entered a defendants' judgment in this action in favor of POF.  *Id.* at 456; and
>
> WHEREAS, all appellate stays related to such final judgment in favor of POF expired on January 23, 2020, and the $549,891 owned by POF is no longer under any legal restriction or attachment by this Court.  *Id.*

Fiano Decl. Ex. M.

The Connecticut Superior Court issued an order in the *Alpha Beta* Action directing that $549,891 of the $5,421,582 in the Cane Trust Account contributed by POF be returned to POF. *See* Dkt No. 37 (citing *Alpha Beta* Action, Dkt. No. 32.).

At the time the Complaint was filed, Plaintiffs alleged that POF Funds and the Schepis and Canelas Funds remained in the Cane Trust Account, Compl. ¶ 22, but Plaintiffs have since

7

averred the POF Funds were returned to POF in early July 2020, while the $962,562 contributed by Schepis and Canelas remains in the Cane Trust Account along with the sums contributed by PCM and PIM.  Dkt No. 60 at 8.

## DISCUSSION

A. Defendants' Motion for Judgment on the Pleadings

"The same standard applicable to Fed.R.Civ.P. 12(b)(6) motions to dismiss applies to Fed.R.Civ.P. 12(c) motions for judgment on the pleadings." *Bank of New York v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010) (citation omitted).  Thus, the Court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in [Plaintiffs'] favor." *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).  Defendant's motion must be granted unless the Complaint includes "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.  Likewise, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at 555).  The ultimate question is whether "[a] claim has facial plausibility, [i.e., whether] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  Put differently, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556; *see also Matrixx v. Siracusano*, 563 U.S. 27, 46 (2011).

1. Conversion

"Under Connecticut law, conversion is 'an unauthorized assumption and exercise of the right of ownership over property belonging to another, to the exclusion of the owner's rights.'" *Joe Hand Promotions, Inc. v. Trenchard*, 2014 WL 854537, at *5 (D. Conn. Mar. 3, 2014) (quoting *Mystic Color Lab, Inc. v. Auctions Worldwide, LLC*, 934 A.2d 227, 234 (Conn. 2007)). The elements of conversion are: "(1) the material at issue belonged to the plaintiff, (2) that [defendant] deprived the plaintiff of that material for an indefinite period of time, (3) that [defendant's] conduct was unauthorized and (4) that [defendant's] conduct harmed the plaintiff." *News Am. Mktg. In–Store, Inc. v. Marquis*, 862 A.2d 837, 848 (Conn. App. Ct. 2004).

There are two types of conversion under Connecticut law. The first occurs where "possession of the allegedly converted goods is wrongful from the outset" and the second "arises subsequent to an initial rightful possession." *Maroun v. Tarro*, 646 A.2d 251, 253 (Conn. App. Ct. 1994). In the second instance, an initial rightful possession can later become wrongful through either (i) a wrongful detention of property; (ii) the exercise of an unauthorized dominion over property, or (iii) the wrongful use of another's property. *Luciana v. Stop & Shop Cos., Inc.* 544 A.2d 1238, 1240 (Conn. App. Ct. 1988); *see also Moore v. Waterbury Tool Co.*, 199 A. 97, 101 (Conn. 1938) (discussing the second class of conversation claims "where the possession, originally rightful becomes wrongful by a wrongful detention").

Plaintiffs do not dispute that they initially entrusted Defendants with their funds and that the initial assumption of their property was not wrongful. *See* Dkt No. 60 at 11. Their claim is based on the allegation that "during the five months between January 23, 2020 [when the

9

appellate stay was lifted] and early July 2020 . . . the Attorney Defendants wrongfully detained the POF funds." *Id.*[2]

Defendants make three arguments in support of their motion for judgment on the pleadings: (1) they did not wrongfully withhold the funds in the Cane Trust Account because the stipulation in the *Claridge Associates* Action prohibited "transfer . . . of any portion of the Attached Funds," Dkt. No. [] at 7; (2) there can be no wrongful detention of the funds because they were voluntarily transferred by Plaintiffs to the Cane Trust Account; and (3) there can be no action in conversion because Defendants had a contractual attorney-client relationship with Plaintiffs.

Defendants' first argument rests on a selective, and only partial, reading of the stipulation. The language of the stipulation does not restrict the transfer of any of the funds in the Cane Trust Account as Defendants contend. By its plain language, it prohibits the transfer of the funds in the Cane Trust Account "delineated in the Disclosure of Assets and/or Marshal's Returns *as being owned by the individual Defendants Anthony Schepis and Frank Canelas (including but not limited to the $962,562 amount set out in the Disclosure of Assets).*" Dkt. No. 51-1 (emphasis added). It is at least plausible that, at no point did the stipulation prevent Defendants from honoring Plaintiffs' request for return of the POF Funds. Indeed, the plausibility of this interpretation is evidenced by the *Claridge Associates* Action court's subsequent statement that the POF funds were "never part of the stipulation or order of this

---

[2] Plaintiffs state in their opposition brief: "Additionally, the Plantiffs are entitled to the return of the Individual Plantiiff's client funds in the amount of $962,562 from the Attorney Defendants. Based on the Attorney Defendants' ethical misconduct with respect to the wrongful detention of the POF funds, they are no longer agents to, or under the control of, the Plaintiffs." Dkt. No 60 at 2. Because this issue is briefed by the parties only in passing, and because the Court declines to dismiss Plaintiff's conversion claim based on allegations of Defendants' conduct relating to the POF, the Court need not, at this stage, reach the plausibility of this claim.

10

court, limiting the ability of the escrow agent to transfer the funds. Nothing in any order of this court appears to have been intended to limit or prevent the transfer of that money, to the extent that it remains held in escrow." Fiano Decl., Ex. K at 48. Defendants' argument would require this Court to understand that statement by the *Claridge Associates* Action court as applying an implausible reading of its own prior order. This theory both defies logic and is contradicted by the plain language of the January 6, 2020 Stipulation and Order itself.

Defendants' second argument misreads Plaintiffs' claim as well as Connecticut law. Plaintiffs do not dispute that they voluntarily entrusted the funds to the Cane Trust Account in 2013. Their claim is that after January 23, 2020, when the appellate stay was lifted, there was no basis for the attorney defendants to retain the POF funds in the Cane Trust Account and not return them to Plaintiffs. Those allegations are sufficient to state a claim for conversion. *See Maroun*, 646 A.2d at 253 (conversion may arise "subsequent to an initial rightful possession" where defendant "wrongfully use[s] [plaintiff's property] or exercise[s] wrongful dominion over it").

Finally, Defendants argue that there can be no basis for a claim of conversion because Plaintiffs entrusted the funds with them pursuant to the attorney-client relationship that they then enjoyed. Dkt. No. 50 at 9; Dkt. No. 63 at 2. That argument too misreads Connecticut law and Plaintiffs' claim. It is true that "[a] mere allegation to pay money may not be enforced by a conversion action . . . and an action in tort is inappropriate where the basis of the suit is a contract, either express or implied." *Aztec Energy Partners, Inc. v. Senor Switch, Inc.* 531 F. Supp. 2d 226, 230-31 (D. Conn. 2007) (quoting *Macomber v. Travelers Prop. & Cas. Corp.*, 804 A.2d 180, 199 (Conn. 2002)). That is so because, as explained in *Macomber*, the Connecticut Supreme Court decision in which that dictum is found, for a "conversion claim to survive a

11

motion to strike, the plaintiffs must present a theory of how the [property] that the defendants allegedly have retained . . . [is] the plaintiffs' property." *Macomber*, 804 A.2d at 198. Thus, as has been articulated in subsequent decisions, a prerequisite to conversion is that there be a particular, identifiable thing which is the plaintiff's property. *See Mystic Color Lab, Inc. v. Auctions Worldwide, LLC*, 934 A.2d 227, 235 (Conn. 2007). This may include money or tangible goods, but a plaintiff may not plead a claim for conversion over a contract right or a general "obligation to pay money owed" under contract. *Id*. ("[A] claim for money owed on a debt is not sufficient to establish [conversion or statutory theft]."); *see Kopperl v. Bain*, 23 F. Supp. 3d 97, 107-8 (D. Conn. 2014) (describing that if a plaintiff's alleged entitlement is not "definite in identity"—as, for example, in the case of a claimed contractual entitlement to "stock options" or "ownership interests" owed under contract—then Plaintiff has not alleged entitlement to a property that was susceptible to conversion); *Garner v. W.R. Berkley Corp.*, 2010 WL 3447880, at *5 (Conn. Super. Ct. Aug. 9, 2010).

This case is entirely different from those upon which Defendants rely.[3] Plaintiffs do not assert a breach of contract claim and do not rely on a contract theory as part of their claim for relief. They allege that they deposited specific, identifiable funds with Defendants for a limited purpose, that they did not relinquish title to the property, and that, upon the expiry of that purpose (i.e., the appellate stay), Defendants unlawfully and without authorization continued to

---

[3] Defendants' reliance on *Aztec Energy Partners*, 531 F. Supp. 2d 226 is misplaced. In that case, the plaintiff, which had been hired to install motion sensing products into a retail grocery store sued the supplier with whom it contracted to purchase those products for failing to honor an agreement to refund the defective or unused products it had returned to the supplier. In addition to the breach of contract claim, plaintiff asserted a claim for conversion. The court dismissed the claim because the request for a refund for products to which plaintiffs relinquished title sounded in contract not in tort or conversion. *Id.* at 230. It highlighted, moreover, that plaintiffs sought neither "the money it paid to [defendant]" nor the return of the products; it had "no need for the products [and] did not want the products, and … sought only monetary credit for its return of the products." *Id*. It noted, "Aztec clearly alleges that a contract is at issue and refused Sensor Switch's offer to return the products." *Id.* at 230 n.2.

12

retain their property. It is not fatal to that claim that Plaintiffs originally voluntarily entrusted Defendants with the funds pursuant to an attorney-client relationship. A claim that conversion "ar[ose] subsequent to an initial rightful possession," *Maroun*, 646 A.2d at 253, frequently follows an initial rightful entrustment of property pursuant to a contractual relationship. *See, e.g. Luciani v. Stop & Shop Cos., Inc.*, 544 A.2d 1238, 1239 (Conn. App. Ct. 1988) (defendant obtained use of property pursuant to a commercial lease, but subsequently removed property from the premises that it was not entitled to remove under the lease); *Fenn v. Yale University*, 2005 WL 327138 (D. Conn. Feb. 8, 2005), *aff'd. on other grounds*, 184 Fed. Appx. 21 (2d Cir. 2006) (professor breached contractual obligation to observe university's internal patent policy and in so doing committed conversion).

2. <u>Statutory civil theft</u>

In Connecticut, civil theft makes liable for treble damages "[a]ny person who steals any property of another, or knowingly receives and conceals stolen property." Conn. Gen. Stat. § 52-564. "The elements of civil theft are [] largely the same as the elements to prove the tort of conversion, but theft requires a plaintiff to prove the additional element of intent over and above what he or she must demonstrate to prove conversion.'" *Sullivan v. Delisa*, 923 A.2d 760, 771 (Conn. App. Ct. 2007). The Connecticut Supreme Court has stated that "[s]tatutory theft under [General Statutes] § 52–564 is synonymous with larceny [as provided in] General Statutes § 53a–119." *See Hi-Ho Tower, Inc. v. Com-Tronics, Inc.*, 761 A.2d 1268, 1281 (Conn. 2000) (alteration and internal quotation omitted). Larceny, in turn, requires a showing of specific intent, and, in particular, the intent to permanently deprive a rightful owner of its property. *See State v. Flowers*, 129 A.3d 157, 162–63 (Conn. App. Ct. 2015) ("Because larceny is a specific intent crime, the state must show that the defendant acted with the subjective desire or

knowledge that his actions constituted stealing . . . Larceny involves both taking and retaining. The criminal intent involved in larceny relates to both aspects. The taking must be wrongful, that is, without color of right or excuse for the act . . . and without the knowing consent of the owner. . . . The requisite intent for retention is permanency."). Thus, "a plaintiff must allege the defendant's intent to permanently deprive plaintiff of his property in order to recover for civil theft." *Vossbrinck v. Eckert Seamans Cherin, & Mellott, LLC*, 301 F. Supp. 3d 381, 391 (D. Conn. 2018); *see, e.g. Whitaker v. Taylor*, 916 A.2d 834, 843 (Conn. App. Ct. 2007) (dismissing a claim for statutory civil theft where the complaint alleged that Defendants had "stolen Ninety Seven Thousand ($97,000.00) Dollars from the Plaintiff," but was "devoid of any factual assertion that they acted with the requisite intent to permanently deprive the plaintiff of her property.").

Defendants argue that the Complaint fails to state a claim for relief for statutory civil theft because (1) it fails to allege he elements of conversion; and (2) it fails to allege intent.

Defendants' argument with respect to conversion is addressed in the preceding section. Because Plaintiffs adequately pled a claim for conversion, the claim for statutory civil theft cannot be dismissed for the failure to plead conversion. *Cf Kopperl*, 23 F. Supp. 3d at 109 (dismissing a claim for statutory theft because plaintiff had not adequately alleged conversion, and the statutory theft claim arose out of the same facts and were based upon the alleged conversion).

However, here, as in *Whitaker*, the complaint is "devoid of any factual assertion that [Defendants] acted with the requisite intent to permanently deprive the plaintiff of her property." 916 A.2d at 843. The Complaint's statement that the Defendants "knowingly and intentionally deprived the Plaintiffs' of their property. . . ," Compl. ¶ 32, is conclusory. Plaintiffs admit in the

Complaint that the funds in question were at all times held as segregated funds in an attorney trust account, Compl. ¶¶ 18, 27, and make only conclusory allegations containing factual material insufficient to permit a plausible inference that Defendants had the requisite intent.  In particular, it is not adequately pled that in refusing to reunite Plaintiffs with the POF Funds and the Schepis and Canelas Funds that Defendants were intending anything other than to exercise caution in ensuring they obeyed court orders in the *Alpha Beta* and *Claridge Associates* Actions. Plaintiffs understandably brought this action in this Court when the Connecticut court was closed to obtain the return of moneys that they claimed Defendants had no right to continue to retain. The Court has held, as elaborated in the preceding section, that it is plausibly alleged that the POF Funds were never in fact subject to the January 6, 2020 Stipulation and Order and thus the conversation claim is well-founded.  However, there is no plausible allegation that Defendants were acting in bad faith—or, put differently, with the intent to deprive Plaintiffs of property that was rightfully theirs—by declining to provide the POF or Schepis and Canelas Funds to Plaintiffs prior to clarification by a court that the funds should be so transferred.  That claim is dismissed.[4]

B. Defendants' motion for interpleader

---

[4] As noted, the civil motion calendar in the Connecticut courts was effectively suspended from approximately March 15, 2020 to approximately May 5, 2020 due to the COVID-19 pandemic, meaning that clarification by the Connecticut courts regarding the status of the contested funds was not possible in that time frame.  The first formal demand made by the Plaintiffs for release of the funds was on March 12, 2020, three days before the beginning of this effective suspension.  Fiano Decl. Ex. D, P. 13.  The funds in question were at all times held as segregated funds an attorney trust account, Compl. ¶¶ 18, 27, and at the end of June, less than a month after the Caldridge Action court issued an order stating that the POF Funds were not subject to the January 6, 2020 Stipulation and Order, and only days after the Alpha Beta court issued an order clarifying that the POF Funds were no longer subject to any attachment, Defendants began the process of returning the POF funds to Plaintiff POF.

Defendants also move for statutory interpleader pursuant to 28 U.S.C. §§ 1335 and 2361. They argue that they are disinterested stakeholders in the middle of competing claims for the $962,562 that remains in the Cane Trust Account and that the Plaintiffs and the Schneider Group as Intervenors represent competing claimants to those funds. Compl. ¶ 26; Dkt. No. 10 at 7-8; Dkt. No. 46 ¶ 13. Plaintiffs do not oppose the deposit of the funds in the registry of the Court but do oppose the second part of Defendants' request—that the Court enter an order discharging Defendants from any further liability. Dkt. No. 60 at 13-14. The Intervenors oppose the request for interpleader and ask that the motion be dismissed for reasons of *forum non conveniens* and in the exercise of the Court's discretion. Dkt No. 57.

The federal interpleader statute, 28 U.S.C. 1335, provides that the federal courts have jurisdiction of interpleader when:

> Any person . . . ha[s] in his or its custody or possession money or property of the value of $500 or more . . . if
>
> (1) Two or more adverse claimants, of [minimally] diverse citizenship . . . are claiming or may claim to be entitled to such money or property . . .; and if
> (2) The plaintiff has deposited such money or property . . . into the registry of the court, there to abide the judgment of the court.
>
> Courts in the Second Circuit follow a two-step process in an interpleader action.

*New York Life Ins. Co. v. Apostolidis*, 841 F. Supp.2d 711, 716 (E.D.N.Y. 2012). First, "the Court determines whether the jurisdictional requirements of Section 1335 have been met and, if it finds they have been, the Court discharges the plaintiff from liability." *Id.* at 716. Second, "the Court adjudicates the claims among the remaining adverse parties." *Id.* at 717.

However, "[t]he availability of such jurisdiction . . . d[oes] not require its exercise." *Truck-A-Tune, Inc. v. Re*, 23 F.3d 60, 63 (2d Cir. 1994); *see Wells Fargo Bank, N.A. v. Waterfall Asset Mgmt., LLC*, 2019 WL 1172269, at *10 (S.D.N.Y. March 13, 2019). Rather, "it is well

recognized that interpleader is an equitable remedy, and a federal court may abstain from deciding an interpleader action, if another action could adequately redress the threat that the stakeholder might be held doubly liable." *Am. Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990) (holding that district court should have abstained from interpleader which intruded impermissibly on state matrimonial jurisdiction in favor of state could which could have exercised interpleader jurisdiction); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Karp.* 108 F.3d 17, 21-22 (2d Cir. 1997) ("[T]he district court acts within its discretion to decline adjudicating issues raised in an interpleader action that can be 'fairly adjudicated' in state court"); *Glenclova Inv. Co. v. Trans-Resources, Inc.*, 874 F. Supp.2d 292, 306 (S.D.N.Y. 2014) (same).

The Court concludes that it should decline to exercise interpleader jurisdiction in the exercise of its discretion. The proper disposition of the $962,562 remaining in the Cane Trust Account lies with the Connecticut Superior court presiding over the *Claridge Associates* Action. That court has explicitly restrained the transfer of those funds and, as far as the Court is aware and has been informed, still maintains control over the funds. By the terms of the restraining order entered by the *Claridge Associates* court, the disposition of the Attached Funds will depend on issues of state law that the court will entertain when it rules upon the request for prejudgment remedy or makes a final judgment. The only adverse claim to the Attached Funds is brought by Plaintiffs in this action, who are also among the defendants in the *Claridge Associates* Action. Thus, resolution of the *Claridge Associates* action will "adequately redress the threat that the [the Defendants in the instant case] might be held doubly liable," *American Airlines*, 905 F.2d at 14; if the *Claridge Associates* court determines that the Attached funds are owed to the plaintiffs in that case, the instant Plaintiff's conversion claim will clearly fail. There

is no threat of double liability.  Considering that substantial time and money have been invested by the parties and the court in the *Claridge Associates* Action, which has been pending for five years, the interest of judicial economy dictates that that case should run its course, and in doing so resolve any purported threat in double liability.  For those reasons, the Third Party Defendants' motion is granted, and the motion for interpleader is denied.

   C. <u>Sanctions</u>

The Court has found that the complaint states a cause of action for conversion.  Accordingly, Defendants' motion—which is based on the notion that the complaint is frivolous—is denied.

## CONCLUSION

For the reasons stated, Defendants' motion for judgment on the pleading is GRANTED IN PART as to Plaintiff's claim for statutory theft, and otherwise denied.  Defendants' motions for sanctions and for interpleader is DENIED.  The parties are directed to meet and confer regarding the further progress of this case and whether it should be dismissed or stayed pending the Connecticut Superior Court's decision.  The Court will hold a status conference on October 16, 2020 at 2:30 p.m. by TELEPHONE CONFERENCE.  At that date and time the parties are directed to dial the Court's conference line at 888-251-2909 (access code 2123101).

The Clerk of Court is respectfully directed to close the motions at Dkt. Nos. 48, 49, and 57.

SO ORDERED.

Dated: October 9, 2020
      New York, New York

                                      LEWIS J. LIMAN
                                      United States District Judge